**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**DR. LORNE ALLAN SEMRAU**                                              **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 5:13-cv-188-DCB-MTP**

**U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, ET AL.**                                              **DEFENDANTS**

## REPORT AND RECOMMENDATIONS

THIS MATTER is before the Court on Defendants' Motion to Dismiss or, in the

Alternative, for Summary Judgment [7].  Having considered the parties' submissions and the

applicable law, the undersigned is of the opinion that Defendants' Motion [7] should be granted,

and this action should be dismissed.

## BACKGROUND

The Court docket reflects that Plaintiff is currently housed and/or incarcerated at the

Federal Medical Center – Butner, in Butner, North Carolina.  At the time this cause of action is

alleged to have occurred or accrued, he was incarcerated at Adams County Correctional Center in

Natchez, Mississippi.  Plaintiff is a Canadian immigrant who has legally resided in the United

States since 1969.  (Complaint [1] at p. 5; [7] Ex. 5).

On March 18, 2011, having been convicted of healthcare fraud, aiding and abetting, in

violation of 18 U.S.C. §§ 1347 & 2, Plaintiff was sentenced by the United States District Court

for the Western District of Tennessee to an 18-month term of incarceration, followed by

supervised release for a term of three years.  (Motion [7] Ex. 3).  After an unsuccessful appeal, on

or about November 27, 2012, Plaintiff began to serve his 18-month term.  (Complaint [1]).

1

Proceeding *pro se,* Plaintiff filed his Complaint [1] on September 26, 2013, against the

U.S. Immigration and Customs Enforcement ("ICE") and John Does 1-50.  Plaintiff asserts

causes of action under the Privacy Act of 1974, 5 U.S.C, § 552a(g)(1)(A)-(D).  The gravamen of

Plaintiff's Complaint is that Defendants have failed to maintain accurate records concerning him.

On November 13, 2013, ICE issued an immigration detainer concerning Plaintiff.  ([7]

Ex. 5).[1]  The detainer served as a notice to Adams County Detention Center and any subsequent

law enforcement agency having custody over Plaintiff that ICE believed Plaintiff was subject to

removal from the United States because he was an alien with a felony conviction.  The detainer

also requested the facility to maintain custody of Plaintiff for a period of time after he would

otherwise have been released, for the purpose of allowing the Department of Homeland Security

("DHS") to take custody of the Plaintiff.   Further, the detainer requested that the agency or

facility notify ICE prior to the time of Plaintiff's release, and notify ICE in the event of Plaintiff's

death, hospitalization or transfer to another institution.  The reason for the stated requests was

that DHS intended to assume custody of the Plaintiff after his prison release.  ([7] Ex. 5).

Plaintiff asserts that the immigration detainer was issued improvidently because he

should not be classified with a Public Safety Factor ("PSF")[2] of "Deportable Alien."  ([1] at pp.

4-5, 11).  He alleges that the circumstances giving rise to the fraud that led to his conviction and

---

[1]The Complaint predates the immigration detainer, as noted by the date thereon.

[2]A PSF is "relevant factual information regarding an inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure safety and protection to the public."  Bureau of Prisons, Program Statement, P5100.08, Ch. 5, p. 8. A PSF requires increased security measures to ensure protection of the public.  *Id*. at p. 4.  A PSF of Deportable Alien is applied to inmates that have a possibility of deportation.  *Id*. at p. 11.

resulting immigration detainer were not attributable to him and that the conviction was

unjustified and based upon conjecture.  ([1] at pp. 5 and 10).  He also claims that the counts upon

which he was convicted cannot be considered deportable offenses.  ([1] at p. 11).[3]  According to

Plaintiff, the allegedly erroneous detainer has continued to adversely affect determinations

regarding his "qualifications, character, rights, privileges, opportunities or benefits."  ([1] at p. 2).

He claims to have reported these alleged errors to DHS/ICE on June 28, 2013, and

September 3, 2013, requesting ICE to: (1) amend its records accordingly; (2) rescind the

immigration detainer; and (3) confirm that Plaintiff would not be deported.[4]  He complains that

ICE did not respond to his written requests.  ([1] at pp. 4-5 and 11).  Defendants assert they never

received any such requests. ([7] Ex. 1).

In his Complaint, Plaintiff alleges three separate violations of the Privacy Act. He first

seeks amendment of his alleged inaccurate records pursuant to 5 U.S.C. § 552a(g)(2)(A).

Second, pursuant to 5 U.S.C. § 552a(g)(3)(A)[5] he seeks access to ICE records that allegedly

---

[3]Plaintiff was the President/CEO of two companies that provided psychiatric services to nursing home residents.  One of the psychiatrists working for Plaintiff improperly coded services, at the direction and with the knowledge of Plaintiff, resulting in upcharges to the government. Plaintiff was found guilty and ordered to pay restitution in the amount of $22,091.56 to the Mississippi Division of Medicaid, and $223,344.30 to the Centers for Medicare and Medicaid services.  ([7] Ex. 4 at pp. 2-6, and Ex. 3).

[4]He allegedly sent the first request to the Director of DHS/ICE in the New Orleans, LA Field Office and to Chief Counsel of DHS/ICE in Oakdale, LA.  The latter request was allegedly sent via certified mail to a Freedom of Information Act Officer in Washington, D.C.  ([1] at pp. 4-5).

[5]Plaintiff cited to 5 U.S.C. § 552a(g)(2)(B) to support his access claim; however, that subdivision provides a remedy for attorneys fees and litigation costs as a consequence of violation of one's right to have his records amended.   Section 552a(g)(3)(A) provides for a cause of action based on access to records.

establish he was wrongfully convicted.   His third cause of action is based upon an alleged

violation of  5 U.S.C. § 552a(g)(1)(C) and 6 C.F.R. § 5.34(e), claiming failure to maintain

accurate records.

Plaintiff seeks injunctive relief, requesting that the Court: (1) declare that Defendants

have failed to properly maintain its records relating to Plaintiff; (2) order Defendants to amend its

records and confirm that the circumstances giving rise to the fraud cannot be attributed to the

Plaintiff; (3) enjoin Defendants from conducting any removal proceedings against him; and (4)

declare that the actions of the Defendants were unlawful.  He also seeks general, special,

compensatory and punitive damages, as well as pre-judgment interest, costs and fees.  ([1] at pp.

17-18).  Essentially, Plaintiff seeks to have his records reflect that he is not guilty of healthcare

fraud sufficient to warrant deportation, and further seeks damages as a result of alleged Privacy

Act violations.

Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment [7]

challenging Plaintiff's claims on various grounds.  ([7] at pp. 1-2).  In their Memorandum in

Support, they advance three primary arguments, including overall failure to state a claim upon

which relief may be granted, failure to exhaust administrative remedies and records exemption

from Privacy Act claims.

On February 3, 2014, not having received a response from the Plaintiff, the Court ordered

the Plaintiff to respond to Defendants' Motion [7].  (Order [10]).  Plaintiff filed a Response [11]

to the Order [10] on February 19, 2014, in which he explained that he had been relocated at about

the time Defendants filed their Motion [7] and that he had never received it.[6]  On May 27, 2014, Counsel for the Defendants re-served the Motion [7] on the Plaintiff via certified mail at his new address, and received a signed return receipt as requested on May 30, 2014.  (Notice of Re-Service of Motion [13] Ex. 1).  Plaintiff has not filed a Response to the Motion [7].  The time for response having expired, the Motion [7] is ripe for decision.

### STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K . Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "This standard 'simply calls for enough fact

---

[6]The record reflects that Plaintiff notified the Court of his address change on December 30, 2013 (Notice [9]).

5

to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Summary judgment is appropriate where the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 56(c)). The burden of establishing the nonexistence of a genuine issue is on the moving party. *Id*. A court may grant summary judgment to defendants only if, viewing the facts in a light most favorable to plaintiff, the defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). The burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S. Ct. at 2554. If the defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that the court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 708, 712.

In the event the defendant or moving party has made an affirmative showing that it is entitled to summary judgment, the burden shifts to the non-moving party to come forward with evidence that creates a genuine issue for trial. *Celotex*, 477 U.S. at 330 (citing 10A Wright,

Miller & Kane § 2727; Fed. R. Civ. P. 56(e)).  If the non-moving party cannot "muster sufficient evidence to make out its claim," summary judgment should be granted.  *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L. Ed.2d 202 (1986)).

## ANALYSIS

The Privacy Act, 5 U.S.C. § 552a, "'safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used.'" *Jacobs v. National Drug Intelligence Center*, 423 F.3d 512, 515 (5th Cir. 2005) (quoting *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996)).  The Act provides four causes of action: (1) for an agency's failure to amend an individual's records pursuant to his request; (2) for an agency's denial of access to an individual's records; (3) for an agency's failure to maintain an individual's records with accuracy, relevance, timeliness, and completeness; and (4) for an agency's failure to comply with other Privacy Act provisions, which has "an adverse effect on the individual."  5 U.S.C. § 552a(g)(1)(A)-(D).

### A.  Plaintiff's Claims for Failure to Maintain Accurate Records and Failure to Amend His Records

Pursuant to 5 U.S.C. § 552a(g)(1)(C), an individual has a cause of action against a federal agency that fails to maintain any record concerning the individual with accuracy, relevance, timeliness and completeness.  Pursuant to 5 U.S.C. § 552a(g)(1)(A), an individual has a cause of action against a federal agency that maintains a system of records when it makes a determination not to amend or review an individual's record according to his request.

Plaintiff complains that Defendants failed to maintain accurate records about him to the extent that they support his guilty verdict and deportation.  Further, he suggests that Defendants failed to maintain records which demonstrate that the circumstances giving rise to the fraud that led to his conviction were not attributable to him and that his conviction was unjustified and based on conjecture.  Plaintiff also complains that Defendants failed to amend his records concerning his guilt and deportation status when he brought these inaccuracies to their attention.[7]

Defendants argue, *inter alia*, that the Plaintiff is unlawfully launching a collateral attack to his conviction.  Indeed, it is inappropriate for a Plaintiff to litigate questions regarding the propriety of his conviction in a Privacy Act suit. "The Privacy Act allows amendment of factual or historical errors.  It is not a vehicle for amending judgments of federal officials or others as those judgments are reflected in records maintained by federal agencies." *Kleiman v. Department of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992) (citations and internal quotations omitted).  Applying that principal, a district court has observed that the Privacy Act "must be more than an end-run around an unfavorable agency decision.... [I]t may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions." *Castella v. Long*, 701 F.Supp.578, 585 (N.D. Tex. 1988).

Therefore, attempts to use the Privacy Act to challenge a conviction, a reprimand imposed as a punishment therefrom, or any other action or decision recorded in an agency file is

---

[7]The Plaintiff complains that his alleged request to amend records and rescind the immigration detainer was not acknowledged.  Defendants argue that Plaintiff failed to exhaust his administrative remedies and, in support, have provided an affidavit stating that requests were not received.  As the undersigned finds Defendants' Motion to Dismiss  meritorious on other grounds, the Court does not address the exhaustion of administrative remedies issue as it pertains to the alleged amendment request.

barred by law.  *See Walker v. U.S.*, 93-2728, 1998 WL 637360, at *14 (E.D. La. Sept. 16, 1998)

(collateral attack by military officer to amend or expunge personnel records, including a Court-

Martial conviction).  Further, the Privacy Act cannot be imposed to force an agency to change a

prisoner's custody classification, security level or facility designation.  *Allmon v. Federal Bureau*

*of Prisons*, 605 F.Supp.2d 1, 7 (D.D.C. 2009) (citations omitted).

      The reasoning in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383

(1994) supports dismissal of Plaintiff's claim.  In *Heck*, a convicted felon raised tort claims under

42 U.S.C. § 1983, which necessarily challenged the legality of his conviction and/or sentence.

The Supreme Court held that such claims are not cognizable absent a showing that the conviction

or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by

a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id*. at 486-87.  Tort claims are not appropriate vehicles by which to collaterally attack criminal

judgments.  *Id*. at 484-86 (citations omitted).  When such claims are presented, a court must

consider whether a judgment favoring the plaintiff would necessarily imply the invalidity of his

conviction or sentence.  *Id*. at 487.

      The *Heck* principle has been extended to Privacy Act claims.  *E.g.*, *White v. U.S.*

*Probation Office*, 148 F.3d 1124 (D.C. Cir. 1998) (per curiam) (dismissing Privacy Act claim

"[b]ecause a judgment in favor of White on his challenge to the legal conclusions in his

presentence report would necessarily imply the invalidity of his sentence, which has not been

invalidated in a prior proceeding"); *Derrow v. Bales*, 9:06cv137, 2007 WL 1511997 (E.D. Tex.

May 22, 2007).  Thus, in a Privacy Act case, where a plaintiff fails to prove that his criminal

conviction has been "reversed, expunged, invalidated or otherwise called into question," it is

barred by *Heck*.  *Derrow*, 2007 WL 1511997, at \*3; *see also Brown v. Bureau of Prisons*, 498 F.Supp.2d 298, 303-04 (D.D.C. 2007) (dismissing Privacy Act claim under *White*, 148 F.3d at 1125-26, for collateral attack to prisoner's sentence, which should have been challenged by a writ of habeas corpus).  Otherwise, such a Privacy Act claim is merely a habeas corpus proceeding in disguise, as it is nothing short of "manipulative behavior" to challenge one's conviction. *Derrow*, 2007 WL 1511997, at \*2-3.

Plaintiff further argues that he has not been convicted of a "deportable offense."  The record establishes otherwise. The Immigration and Nationality Act (INA), 66 Stat. 163, 8 U.S.C. § 1101 et. seq., provides that a noncitizen who has been convicted of an "aggravated felony" may be deported from this country.  *Moncrieffe v. Holder*, 133 S.Ct. 1678, 1682 (2013).  "Aggravated felony" means an offense that involves fraud and deceit in which the loss to the victim exceeds $10,000.00.  8 U.S.C. § 1101(a)(43)(M)(I).  Convicted of healthcare fraud, Dr. Semrau was ordered to pay restitution in the amount of $245,435. ([7] Ex. 3).  Thus, his argument is without merit.  Irrespective of the bar placed by *Heck* and its progeny on amending, or declaring inaccurate, records of criminal conviction and sentencing under the Privacy Act, the immigration detainer is appropriate based upon the facts presented.

The Court has considered the Plaintiff's Complaint and found that amending Plaintiff's records or declaring them inaccurate as he requests would imply the invalidity of his conviction. *See Heck*, 512 U.S. at 487.  According to his Complaint, Plaintiff's conviction was upheld on appeal and therefore has been neither "reversed, expunged, invalidated or otherwise called into question."  *See Derrow*, 2007 1511997, at \*2-3.  Thus, his accuracy and amendment claims are barred by law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B. Plaintiff's Claim for Failure to Provide Access to His Records

Pursuant to 5 U.S.C. § 552a(g)(1)(B), an individual has a cause of action against a federal agency that maintains a system of records when it refuses to comply with an individual's request under subsection (d)(1), which states that the agency shall:

> upon request by any individual to gain access to his record or to any information pertaining to him which is contained within the system, permit him ... to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, ....

5 U.S.C. § 552a(d)(1).  To properly allege an access claim, a plaintiff must show: "(1) a request for records was made; (2) the request was denied; and (3) such denial or failure to act was improper under the Privacy Act."  *Singh*, 2014 WL 67254, at *5 (citing 5 U.S.C. §§ 552a(d)(1), (g)(1)(B), (g)(3)(A)).  The remedy for a violation of an access claim is limited to injunctive relief, fees and costs.  *Id.* § 552a(g)(3)(A) and (B).

The request for access to a Department of Homeland Security record should be sent directly to the central Privacy Act office of the department component that maintains the record. 6 C.F.R. § 5.21(a).  According to the applicable regulations, if the individual is unable to determine exactly where to send his request, he may send it to the Departmental Disclosure Officer, Department of Homeland Security, Washington, D.C. 20528.  *Id*.  The request must include a detailed description of the records sought, sufficient to enable the Department personnel to locate the system records containing them with "reasonable amount of effort."  *Id.* § 5.21(b).  A request for records about oneself must include the requestor's name, current address, date and place of birth.  In addition, it must be signed and notarized.  *Id.* § 5.21(d).  Failure to

present a request that comports with the applicable Privacy Act regulations constitutes a failure to exhaust administrative remedies. *Taylor v. U.S. Treasury Dept*. 127 F.3d 470, 474 (5th Cir. 1997).

In his access claim, Plaintiff requests access to records which allegedly establish that he is not guilty of the fraud crimes for which he was convicted. ([1] at pp. 12-13). Although he claims to have exhausted his administrative remedies, the factual allegations he sets forth in his Complaint do not show that he did so. In March 2013, pursuant to a Freedom of Information Act request, he claimed to have received 112 documents from the United States Citizenship and Immigration Services, National Records Center. Thereafter, he allegedly sent requests to ICE seeking "amend[ment of] its inaccurate, irrelevant, untimely and incomplete records and consequently resci[ssion of] its improvidently issued immigration detainer." ([1] at pp. 4-5,¶¶ 13-15). In those requests, he argued his innocence. ([1] at pp. 5-11, ¶¶ 16-56). What is patently lacking from his alleged communication with ICE is a request to access or obtain any additional records over and beyond the immigration detainer and the 112 other documents.

Moreover, in moving for summary judgment, Defendants have produced evidence indicating that the Plaintiff did not send any requests to ICE, either requesting amendment of records or access to records. Thus, they have discharged their burden by pointing out the absence of evidence to support Plaintiff's access claim. The burden shifted to the Plaintiff, who has failed to come forward with any evidence to refute Defendants' position. The undersigned finds an absence of any evidence to support that Plaintiff actually exhausted his administrative

remedies prior to filing suit.  As no genuine issue of material fact exists, the undersigned

recommends the entry of summary judgment as to the access claim.[8]

The jurisprudential exhaustion doctrine is a "long settled rule of judicial administration

which mandates that no one is entitled to judicial relief for a supposed or threatened injury until

the prescribed remedy has been exhausted." *Taylor,* 127 F.3d at 476 (quoting *Myers v.

Bethlehem Shipbuilding Corp*., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463-64, 82 L.Ed. 638 (1938)

(internal quotations omitted)).   While courts have discretion in applying the jurisprudential

exhaustion requirement, a court may excuse a claimant's failure to exhaust only in extraordinary

circumstances.  *Id.* at 477.   The Plaintiff has not only failed to produce evidence to support a

cause of action for access his records, but he has also failed to assert any circumstances or come

forward with any evidence which would merit this Court's excusing his failure to exhaust.  *See

id.*  (Traditional circumstances include inadequacy of the administrative remedy, remaining

constitutional claim, unlawful or futile administrative process.).

Plaintiff has failed to state claims upon which relief can be granted concerning his

amendment and accuracy claims.  Moreover, he there is no genuine issue of material fact

---

[8]The Defendant also argues that the Court lacks subject matter jurisdiction, so the claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  However, under the Privacy Act, exhaustion of administrative remedies does not present a jurisdictional defect to bar a plaintiff's Privacy Act claims.  Exhaustion is "not a jurisdictional prerequisite" under the Privacy Act because it is not required under the statute. *Taylor,* 127 F.3d at 475-76.  However, a failure to exhaust analysis does not end if a statute is silent about exhaustion requirements.  The jurisprudential doctrine is then invoked, which controls whether a case should be dismissed for failure to exhaust administrative remedies.  *Id*.

Defendants also move for dismissal under Fed. R. Civ. P. 12(b)(6).  Failure to exhaust is a ground for 12(b)(6) dismissal where a plaintiff's complaint includes his improperly presented letters requesting access as part of his complaint. *See id*. at 475 n.6.

regarding his failure to exhaust administrative remedies as to his access claim, and as a matter of law, summary judgment should be entered.[9]

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [7] be GRANTED, and that Plaintiff's Complaint be dismissed with prejudice, except as to his access claim under 5 U.S.C. §552a(g)(1)(B), which should be dismissed without prejudice for failure to exhaust.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions

---

[9]Defendants have further asserted that the records at issue are exempt from amendment or correction.  As dismissal or summary judgment is appropriate on other grounds, the Court need not address whether the records are exempt pursuant to 5 U.S.C. § 552a(j)(2).

14

accepted by the district court to which the party has not objected.  *Douglass v. United Servs.*

*Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 7th day of August, 2014.

s/ Michael T. Parker
United States Magistrate Judge

15